461 A.2d 324

**COMMONWEALTH of Pennsylvania**

v.

**Gary Allen CASNER, a/k/a Gary Rossman, a/k/a Gary Rozier, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 15, 1982.

Decided May 27, 1983.

14

Peter J. O'Donnell, Lewistown, for appellant.

William A. Helm, District Attorney, Lewistown, for Commonwealth, appellee.

Before CAVANAUGH, WICKERSHAM and MONTEMURO, JJ.

WICKERSHAM, Judge:

This case comes to us after President Judge R. Lee Ziegler of the Mifflin County Court of Common Pleas denied Gary Allen Casner's petition for relief pursuant to the Post Conviction Hearing Act.[1] Casner pleaded guilty to a charge of robbery on May 9, 1978. A sentence of two and one-half to five years imprisonment was imposed on August 16, 1978.

Casner filed a pro se petition under the Post Conviction Hearing Act; appointed counsel filed an amended PCHA petition. The court below conducted hearings on Casner's petition. At these hearings Casner testified, as did the public defender who represented Casner up to the time of sentencing. On April 30, 1980, Judge Ziegler denied Casner's petition; this appeal timely followed.

The facts underlying Casner's conviction were developed at Casner's guilty plea hearing and may be summarized as follows. A police officer testified that on December 31, 1977, at about six-thirty in the evening he was called to investigate a robbery complaint. The victim of the crime told the police officer that a man pushed his way into her home. Once inside the man told her he was a government agent investigating a murder and that he would have to search the house. When the victim challenged the intruder, he took some money and a wallet from her. There was a brief struggle over the wallet; the man pushed the victim, took the wallet again and fled. The police officer stated that the victim was shaken and upset when he arrived.

1. 42 Pa.C.S. §§ 9541–51.

The victim of the crime also testified at the guilty plea hearing. The victim said that the man who took her money struck her in the face and threw her about the room. As the man left her home, he said he would come back and kill her.

When a defendant enters a guilty plea the only legally cognizable issues in a post conviction proceeding are those which affect either the voluntariness of the guilty plea or the legality of the sentence. Moreover, a challenge to the voluntariness of the guilty plea will not be entertained in the absence of a motion to withdraw the plea in the trial court. *Commonwealth v. Harris,* 492 Pa. 381, 386 n. 2, 424 A.2d 1242, 1244 n. 2 (1981). Casner has not filed a motion to withdraw his guilty plea but the rule announced in *Harris, id.,* is not applicable to this case.

In *Commonwealth v. Miller,* 495 Pa. 177, 179–80, 433 A.2d 1, 2 (1981) the Pennsylvania Supreme Court said:

Ordinarily a party on appeal who seeks to challenge a guilty plea must first have filed a motion to withdraw the plea in the court where it was entered.... However, where as here, an appellant attacks a plea of guilty on the basis that trial counsel's ineffectiveness contributed to the plea and where appellant was represented post-trial by the same counsel, we have permitted appellate review of the claim on the merits.

(Footnotes and citations omitted). See also, *Commonwealth v. Williams,* 496 Pa. 486, 437 A.2d 1144 (1981). Casner has alleged that ineffectiveness of his trial counsel caused the entry of an involuntary plea and his present PCHA petition is the first time he has had different counsel. Therefore, his claims are properly before this court. *Commonwealth v. Swift,* 299 Pa.Super. 77, 81 n. 2, 445 A.2d 156, 157 n. 2 (1982); *Commonwealth v. Weiss,* 289 Pa.Super. 1, 4, 432 A.2d 1020, 1021 (1981); *Commonwealth v. Maute,* 263 Pa.Super. 220, 397 A.2d 826 (1979).

The first two of the many issues [2] raised in this appeal are:

Where Defendant was not advised of three (3) of the essential features of his right to trial by jury during the colloquy immediately preceding entry of his guilty plea, but was advised of such features both orally and in writing at arraignment approximately six (6) weeks prior to entry of guilty plea, was the guilty plea involuntary by reason of the inadequate colloquy?

Where guilty plea colloquy was inadequate and Trial Counsel neither attempted to make Defendant aware of his rights nor appealed pursuant to Defendant's request, did Defendant waive his claim of involuntariness of his plea?

Specifically, Casner says that his guilty plea colloquy was fatally defective because he was not apprised that:

(1) A jury verdict would have to be unanimous, and
(2) that the jury would be selected from members of the community, and

---

**2.** Appellant's statement of questions involved in his appeal extends over 2½ pages of his brief. Although we have carefully considered all these allegations of error we wish to call to the attention of appellant's counsel Rule 2116 of the Pennsylvania Rules of Appellate Procedure. The rule provides:

**Rule 2116. Statement of Questions Involved**

(a) **General rule.** The statement of the questions involved must state the question or questions in the briefest and most general terms, without names, dates, amounts or particulars of any kind. *It should not ordinarily exceed 15 lines, must never exceed one page,* and must always be on a separate page, without any other matter appearing thereon. This rule is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby. Whenever possible each question must be followed immediately by an answer stating simply whether it was affirmed, negatived, qualified or not answered by the court or other government unit below. If a qualified answer was given to the question, appellant shall indicate, most briefly, the nature of the qualification, or if the question was not answered and the record shows the reason for such failure, the reason shall be stated briefly in each instance without quoting the court or other government unit below. Emphasis added.

(3) that Casner had the right to participate in jury selection.

In response to Casner's argument the Commonwealth contends that the details of Casner's right to a jury trial were adequately explained in a written form Casner signed at his arraignment. According to the Commonwealth, Casner's rights were protected by the written explanation offered at his arraignment. Casner signed the arraignment form, which indicated that he was represented by counsel and that he understood the various rights read to him by the court.

■ Both case law and supreme court rule have established the essential elements of a guilty plea colloquy. Before a trial judge accepts a plea of guilty he or she must, at a minimum, inquire into the following areas:

(1) Does the defendant understand the nature of the charges to which he is pleading guilty?

(2) Is there a factual basis for the plea?

(3) Does the defendant understand that he has the right to trial by jury?

(4) Does the defendant understand that he is presumed innocent until he is found guilty?

(5) Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?

(6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

See Pa.R.Crim.P. 319, Comment and *Commonwealth v. Willis*, 471 Pa. 50, 369 A.2d 1189 (1977). In this case, Casner complains that he did not receive an adequate explanation of his right to a trial by jury.

■ At the guilty plea colloquy of May 9, 1978, the trial judge asked Casner: "Do you understand that you have a right to trial by jury?" Casner replied: "Yes, sir." Record at 9. Taken alone, this colloquy is inadequate under the rule of *Commonwealth v. Washer*, 253 Pa.Super. 209, 384 A.2d 1305 (1978). In *Washer*, this court adopted the posi-

tion that before a defendant can waive his right to a jury trial, the record must establish that the defendant knew the essential elements of a jury trial. These crucial elements of a jury trial are that the jury be chosen from members of the community, that the verdict be unanimous and that the accused be allowed to participate in jury selection. *Id.*, 253 Pa.Superior at 213–14, 384 A.2d at 1308.

The elements of a jury trial set forth by the court in *Washer, supra,* were provided to Casner in a written form read at his arraignment. The arraignment form read:

JURY TRIAL. You have the right to be tried by a jury of twelve citizens of the county. To be valid, a verdict must be unanimous, i.e. each juror must agree with the verdict. A panel of prospective jurors will come into the Courthouse at the time of the trial. You will be permitted to help select from the panel the twelve who will try your case. A list of the jurors for each session of court is posted before the session in the office of the Clerk of the Courts. You may obtain a copy of that list from the Clerk so that you can go over it and familiarize yourself with the names and addresses of the persons on that list.

Casner indicated on the form that he understood the rights explained therein and signed the form. This arraignment form clearly encompasses all of the elements enumerated in *Washer,* the question is whether the use of a written form can supplement a guilty plea colloquy.

The appellants in *Washer* phrased the issue thusly, contending "that their guilty pleas were not voluntarily and knowingly entered because... a printed questionaire and information sheet may not supplement an on-the-record guilty plea colloquy." *Washer, supra,* 253 Pa.Superior at 210, 384 A.2d at 1306. The *Washer* court did not decide the issue because it found "that the record as a whole, including the guilty plea colloquy and the written forms, did not establish that appellant's pleas were voluntarily and knowingly entered. Consequently, we do not reach the broader issue of whether Rule 319(a) permits such written forms to

supplement an on-the-record colloquy." *Id.*, 253 Pa.Superior at 211–12, 384 A.2d at 1307.

Under the particular facts of this case we believe that the written arraignment form adequately supplemented the guilty plea colloquy. Here, the written form provided a complete list of the essential attributes of a jury trial as required by *Washer, supra.* The trial judge read the arraignment form to Casner at arraignment. The defendant himself provided written acknowledgment that he understood his rights as explained by the arraignment form. Accordingly, Casner's guilty plea colloquy was adequate and, therefore, counsel was not ineffective.

Casner also argues that several instances of trial counsel's ineffectiveness caused him to enter an involuntary guilty plea and that these contentions are not waived because this is the first time Casner has had different representation than trial counsel.[3] We will consider Casner's allegations of ineffectiveness seriatim.

---

**3.** Casner phrases these issues as follows:

3. Where Defendant informed Trial Counsel of the identity of witnesses who were available to testify and whose testimony would have been helpful in establishing a defense, but Trial Counsel failed to contact such witnesses and otherwise investigate the facts of the case, was Defendant denied his right to competent counsel?

4. Where Defendant was identified by the victim of the crime on a "one-on-one" identification during Defendant's preliminary hearing, while Defendant was handcuffed and after the victim had had an opportunity to observe Defendant being led from the jail to the place where the hearing was held, and Trial Counsel thereafter refused to file a motion to suppress the identification though requested by Defendant to do so, was Defendant denied his right to competent counsel?

5. Where Defendant was identified by the victim of the crime in a "one-on-one" identification at Defendant's preliminary hearing, while Defendant was handcuffed and after victim had had an opportunity to observe Defendant being led from the jail to the place where the hearing was held, and Trial Counsel thereafter refused to request a line-up though requested by Defendant to do so, was Defendant denied his right to competent counsel?

6. Where Trial Counsel represented Defendant at guilty plea proceeding during which the court below failed to advise Defendant of three (3) essential features of his right to trial by jury and Trial Counsel failed to take any action to have such essential features

■ Casner believes that his trial counsel was ineffective for failing to investigate an alibi defense. Casner argues that trial counsel was ineffective for failing to interview three witnesses who would testify that Casner spent the day of the robbery drinking at a local bar. Trial counsel testified that Casner's statement about drinking all day was offered as an explanation, not as an alibi defense; further, counsel stated that Casner was willing to plead and that Casner disagreed with the amount of money taken in the robbery.

Casner did not tell his trial counsel that he was innocent of the offense charged and took issue only with the amount of money stolen. Counsel was, therefore, under no duty to investigate possible alibi witnesses, for Casner virtually admitted the crime and said he would plead. There was no ineffectiveness.

■ Casner argues that trial counsel was ineffective for failing to move for suppression of the victim's identification of Casner. Casner believes that the identification was impermissibly tainted because it was a one-on-one identification after the victim saw Casner in handcuffs. Casner concedes that the reliability of an identification is to be judged by the totality of the circumstances and that a circumstance that can be considered is the opportunity of the witness to see the criminal. See *Commonwealth v. Ransome*, 485 Pa. 490, 402 A.2d 1379 (1979), *Common-*

explained to Defendant, was Defendant denied his right to competent counsel?

7. Where Trial Counsel failed to properly investigate the case, failed to move to suppress a suggestive identification, failed to request a line-up after a suggestive identification, and failed to insure that Defendant was advised of all of the essential features of his right to trial by jury, did Trial Counsel's ineffectiveness cause Defendant to enter an involuntary guilty plea?

8. Where Defendant was represented at all times during which claims of ineffectiveness of Trial Counsel could have been raised, prior to the appointment of independent counsel for purposes of post-conviction proceeding, was a waiver of Defendant's claim of ineffectiveness precluded by the existence of "extraordinary circumstances".

*wealth v. Johnson,* 301 Pa.Super. 13, 15, 446 A.2d 1311, 1312 (1982).

Presently, the victim of the robbery had an excellent opportunity to see Casner during the commission of the crime. The victim had Casner in view throughout his intrusion into her home and gave consistent testimony at a preliminary hearing and the guilty plea hearing. Given that the victim had a good, long look at Casner in her lighted home, there was no ineffectiveness in failing to file a motion to suppress the identification. See *Commonwealth v. Williams,* 274 Pa.Super. 464, 418 A.2d 499 (1980).

Nor was counsel ineffective for failing to request a lineup. There is no constitutional right to a line-up, see *Commonwealth v. Sexton,* 485 Pa. 17, 23, 400 A.2d 1289, 1292 (1979); *Commonwealth v. Liverpool,* 294 Pa.Super. 133, 439 A.2d 786 (1982), and the suggestiveness of a confrontation is only a factor to be considered in determining the reliability of identification evidence. *Id.,* 294 Pa.Superior at 140, 439 A.2d at 789–90. Again, the victim saw Casner during the crime in her own home. This provided an independent basis for her identification of Casner despite the lack of a line-up. Trial counsel cannot be deemed ineffective for failing to request a fruitless procedure.

Casner's trial counsel was not ineffective and thus Casner's guilty plea was not induced by incompetent counsel.

Order affirmed.